**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-02281-REB

JENNIFER I. LAGRANGE,

    Plaintiff,

v.

CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[2] filed August 27, 2012, seeking review of the Commissioner's decision denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of degenerative disc disease of

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and thus her name is substituted for that of Michael J. Astrue as the defendant in this suit. **FED. R. CIV. P.** 25(d)(1). By virtue of the last sentence of 42 U.S.C. § 405(g), no further action need be taken to continue this lawsuit.

[2] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

the lumbar spine and anxiety. After her application for supplemental security income benefits was denied, plaintiff requested a hearing before an administrative law judge. A hearing was held on June 23, 2009. The ALJ issued an unfavorable decision, and the Appeals Council denied plaintiff's request for review. On appeal to this court, the Commissioner requested that the case be remanded, and a second hearing was held before the ALJ on December 5, 2011. At the time of this most recent hearing, plaintiff was 39 years old. She has a high school equivalency diploma and no past relevant work experience. She has not engaged in substantial gainful activity since May 8, 2007, the date of her application for benefits.

The ALJ found that plaintiff was not disabled and therefore not entitled to supplemental security income benefits. Although the evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found that plaintiff had the residual functional capacity to perform a full range of light work so long as it involved no dealing with the general public. Although plaintiff had no past relevant work for comparison, the ALJ concluded that there were jobs existing in significant numbers in the national and local economies that were within her residual functional capacity. He therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous

work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. ***See Kelley v. Chater***, 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work

> in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 416.920(b)-(f). *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff presents four arguments in support of her appeal, which for purposes of my analysis, I consolidate into two: (1) whether the ALJ erred in discrediting the opinion of plaintiff's treating physician that she could not stoop and accepting instead the contrary assessment of the state agency physician; and (2) whether the ALJ wrongly discounted certain opinions of record regarding the functional limitations occasioned by plaintiff's mental impairment. Finding no reversible error in either instance, I affirm.

Plaintiff's complaints of back pain originate from an April, 2007, accident in which she fell on her tailbone. (Tr. 169-171.) Plaintiff saw her family practitioner, Dr. Richard King, who prescribed medication. Although Dr. King suggested that plaintiff might be magnifying her symptoms (Tr. 184), a June, 2007, MRI showed a moderately sized disc protrusion in the lumbar spine (Tr. 151-152). Plaintiff's condition improved on medication through the following several months (*see* Tr. 176, 247), and she last saw Dr. King for back complaints in March, 2008 (Tr. 244).

While plaintiff was in the midst of this treatment, Dr. King completed a questionnaire on her behalf wherein he stated, most relevantly for present purposes, that plaintiff could "seldom" stoop. Otherwise, he stated that she could lift up to 25 pounds, placed no restrictions on her ability to walk, sit, stand, or squat, and allowed that she could frequently crawl and kneel. (Tr. 236-237.)

The ALJ found that Dr. King's opinion was internally inconsistent, insofar as it

suggested that plaintiff was restricted in stooping but not squatting, which was not explained in the check-box form Dr. King completed. In addition, the ALJ concluded that Dr. King's own treatment notes did not support such a limitation on stooping. He therefore afforded no weight to this portion of Dr. King's opinion. (Tr. 429.) Instead, he gave "great weight" to the contrary opinion of Dr. Alan Ketelhohn, a non-examining state agency physician who reviewed the medical record at around this same time, who concluded that plaintiff had no postural restrictions. (Tr. 207, 429.)

Plaintiff maintains that in so concluding, the ALJ violated the treating physician rule. The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 416.927(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). Even if a treating source opinion is not given controlling weight, it is still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." **Social Security Ruling 96-2p**, 1996 WL 374188 at *4 (SSA July 2, 1996). *See also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).[3] In all events, a treating source opinion may not be rejected absent good cause

---

[3] These factors include:

1. the physician's length of treatment of the claimant;
2. the physician's frequency of examination;
3. the nature and extent of the treatment relationship;
4. the support of the physician's opinion afforded by the medical evidence of record;

6

for specific, legitimate reasons clearly articulated in the hearing decision.  ***Watkins***, 350 F.3d at 1301; ***Goatcher v. United States Department of Health & Human Services***, 52 F.3d 288, 290 (10th Cir. 1995); ***Frey***, 816 F.2d at 513.

Plaintiff suggests that Dr. King's treatment notes do support his stooping restriction, pointing to a June 12, 2007, report in which Dr. King noted that plaintiff was "exquisitely tender over the right piriformis area . . . [a]ny movement that stretches the piriformis causes pain."  (Tr. 178.)[4]  Plaintiff presents nothing to suggest that the act of stooping,[5] but not that of squatting, meets this criteria.  Although it would be error for the ALJ to substitute his judgment for that of a medical professional, ***see Hamlin v. Barnhart***, 365 F.3d 1208, 1221 (10th Cir. 2004) , his common sense conclusion that these two actions were equivalent in terms of the functional limitations they might be expected to cause provides no grounds for reversal, ***see Delafontaine v. Astrue***, 2011 WL 53084 at *10 n.29 (D.N.H. Jan. 7, 2011) (ALJ does not improperly state a medical opinion by making common sense judgments about functional capacity based on medical reports portraying claimant's restrictions in functional terms) (citing ***Gordils v. Secretary of Health and Human Services***, 921 F.2d 327, 329 (1st Cir. 1990)).

---

      5.      the consistency of the opinion with the record as a whole; and
      6.      the specialization of the treating physician.

20 C.F.R. §§ 404.1527(d)(2) & 416.927(d).

[4] "The piriformis . . . is a muscle in the gluteal region of the lower limb. . . . It originates from the anterior (front) of the sacrum . . . and from the superior margin of the greater sciatic notch . . . . The piriformis muscle is part of the lateral rotators of the hip . . . The piriformis laterally rotates the femur with hip extension and abducts the femur with hip flexion." **Piriformis Muscle**, Wikipedia (available at http://en.wikipedia.org/wiki/Piriformis_muscle) (last accessed November 6, 2013).

[5] The Commissioner defines stooping as "bending the body downward and forward by bending the spine at the waist." **Social Security Ruling** 85-15, 2985 WL 56857 at *7 (SSA 1985).

In addition, the ALJ plainly relied heavily on the facts that plaintiff's pain had been responsive to medication at the time she was seeking treatment for it, and, even more, that she had not sought treatment for or complained to her medical providers about back pain since March, 2008. (Tr. 425.) Both these findings are fully supported by the record and provide valid reasons for refusing to fully credit a treating source opinion. *See Pacheco v. Sullivan*, 931 F.2d 695, 698 (10th Cir. 1991) (impairment that can be controlled with treatment is not disabling); *Huston v. Bowen*, 838 F.2d 1125, 1132 & n.7 (10th Cir. 1988) (lack of treatment undermines allegation that impairment is disabling). Under the circumstances, the ALJ was entirely justified in concluding that the opinion of the state agency physician as to this particular aspect of plaintiff's residual functional capacity was entitled to more weight than that of Dr. King. **Social Security Ruling** 96-6p, 1996 WL 374180 at *3 (SSA July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." ).

Moreover, assuming *arguendo* that this determination was error, it was undoubtedly harmless. *See Williams v. Chater*, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995); *Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988). The ALJ asked the vocational expert at the second hearing whether the inability to stoop would effect the availability of the jobs previously identified as being within plaintiff's residual functional capacity. He testified that such a restriction would not eliminate the job of

production assembler. (Tr. 462.)[6] That job clearly exists in significant numbers in the national and local economies, thus satisfying the Commissioner's burden of proof at step five. (*See* Tr. 30 (vocational expert testimony that job of production assembler has 387,000 jobs nationally and 3,350 in Colorado).) *See Trimiar v. Sullivan*, 966 F.2d 1326, 1331-32 (10th Cir. 1992). For all these reasons, the determination of the ALJ in this regard will be upheld.

Plaintiff's second group of arguments centers on the ALJ's assessment of the opinions of Dr. Richard Madsen, a consultative psychological examiner, and Dr. Jose Vega, a doctor who examined plaintiff on behalf of the Colorado Department of Human Services.[7] Dr. Madsen suggested that plaintiff would have difficulty maintaining a regular work schedule. (Tr. 215.) Dr. Vega opined that plaintiff suffered from moderate to marked impairments in most realms of psychological functioning. (Tr. 349-350.) The ALJ afforded these opinions "[l]ittle weight." (Tr. 430.)

While I agree with plaintiff that some of the reasons cited by the ALJ for this determination do not bear scrutiny, the ALJ did note that neither opinion was supported by the examiner's own observations or the medical record as a whole. The ALJ thoroughly and exhaustively reviewed the medical evidence relevant to plaintiff's mental impairment, noting significant lapses in plaintiff's treatment and the apparent responsiveness of her condition to medication once treatment was resumed. (Tr. 425-

---

[6] This testimony answers plaintiff's argument that an inability to stoop would erode the available job base.

[7] The record also contains the report of a non-examining doctor, Dr. Alberta Ziomek, who suggested that Dr. Madsen's conclusions were not supported by the medical evidence of record (Tr. 229) and that plaintiff's alleged mental impairments were not severe (Tr. 217).

428.) As noted previously, these are valid and compelling reasons to reject or limit the impact of a medical opinion.[8]  *See Pacheco*, 931 F.2d at 698; *Huston*, 838 F.2d at 1132 & n.7.  *See also Frey*, 816 F.2d at 513.  I perceive no reversible error in this regard.

Similarly, the ALJ did not err in accepting Drs. Madsen's and Vega's conclusions that anxiety was a severe impairment but rejecting the limitations they suggested attended that determination.  The ALJ found that the diagnosis of anxiety was consistent with the record as a whole, including plaintiff's own reports.  Having done so, however, he was not then bound to accept every (or any particular) limitation suggested by the examiners.  *See Vendetti v. Astrue*, 2010 WL 3516652 at *4 (D. Colo. Aug. 31, 2010).  I thus find and conclude that the ALJ's determination is this regard must be upheld.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated November 7, 2013, at Denver, Colorado.

                                          **BY THE COURT:**

Robert E. Blackburn
United States District Judge

---

[8]  The ALJ also noted that these limitations appeared to be based largely on plaintiff's subjective report of his symptoms. (Tr. 427, 428.) Although the fact that a medical professional basis his opinion on a claimant's subjective reports, standing alone, provides no independent ground for rejecting that opinion, *see Orender v. Barnhart*, 2002 WL 1747501 at *6 (D. Kan. July 16, 2002) (citing *Nieto v. Heckler*, 750 F.2d 59, 61-62 (10th Cir. 1984)), in conjunction with the other sufficient bases on which the ALJ here relied, such considerations are not improper and lend further support to the ALJ's decision to discredit these opinions.